UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRENDA MYERS, on behalf of C.N.,

                Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

**DECISION AND
ORDER**

09-CV-1429
(VEB)

## I. INTRODUCTION

In August of 2007, Plaintiff Brenda Myers filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act on behalf of her

daughter, C.N. ("Claimant"),[1] alleging disability due to various impairments, including

diabetes mellitus, speech and motor delays, and Attention Deficit Hyperactivity Disorder

("ADHD"). The Commissioner of Social Security denied the application.

Plaintiff, through her attorney, Jaya A. Shurtliff, Esq., commenced this action

seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C.

§§ 405 (g) and 1383 (c)(3).

This case was referred to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14). Thereafter, the parties,

by and through their respective counsel, consented to the jurisdiction of a United States

_____

[1]C.N. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil
Procedure, she will be referred to as "Claimant" in this Decision and Order.

Magistrate Judge pursuant to 28 U.S.C. § 636 (c) and Rule 73 of the Federal Rules of Civil Procedure.  (Docket No. 16).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother and guardian of Claimant, a minor child.  On August 3, 2007, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on June 28, 2007. (T at 90-92).[2]  The application was denied initially.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  On April 10, 2009, a hearing was held before ALJ Dennis O'Leary. (T at 36). Plaintiff and Claimant appeared in Binghamton, New York with an attorney; the ALJ presided via videoconference from Newark, New Jersey. (T at 36-54).

On June 3, 2009, ALJ O'Leary issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 20-35).   The ALJ's decision became the Commissioner's final decision on November 20, 2009, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 1-3).

On December 23, 2009, Plaintiff, acting on Claimant's behalf and with counsel, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on May 24, 2010. (Docket No. 8).  Plaintiff filed a supporting Brief on July 12, 2010.  (Docket No. 11).  The Commissioner filed a Brief in opposition on August 26,

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9)

2010. (Docket No. 13).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for the calculation of benefits.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

4

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

6

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ noted that Claimant was born on November 15, 2001, and was therefore a "school-age child," as defined pursuant to 20 CFR § 416.926a(g)(2), on August 3, 2007 (the date the application for benefits was filed).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant had Type 1 diabetes mellitus, a speech delay, motor delays, and ADHD, all of which the ALJ recognized as "severe" impairments under the Social Security Act. (T at 26).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 26).  The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 26-27).

As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting with and relating to others; (4) less than marked limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for herself; and (6) less than marked limitation with regard to health and physical well-being. (T at 27-34).

As such, the ALJ found that Claimant had not been disabled, as defined under

the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision.  (T at 34).  As noted above, the ALJ's decision became the Commissioner's final decision on November 20, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

### 2.     Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  In support of this position, she offers three (3) principal arguments.  First, she contends that the ALJ did not adequately develop the medical record.  Second, she challenges the ALJ's credibility determination.  Third, Plaintiff argues that the ALJ should have found that her impairments functionally equaled a listed impairment.  This Court will address each argument in turn.

### a.     Development of the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir.1982)); see also 20 C.F.R. § 416.912 (d)(1)("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.").

In this case, Plaintiff argues that the ALJ did not adequately develop the record concerning Claimant's diabetes mellitus.  In particular, Plaintiff contends that the ALJ should have sought the records of Dr. Wu, Claimant's pediatric endocrinologist.  This Court finds Plaintiff's argument unpersuasive for the reasons that follow.

Claimant was initially diagnosed with juvenile diabetes in July of 2007 during an emergency room visit to Our Lady of Lourdes Memorial Hospital in Binghamton. (T at 222-23).  After Plaintiff filed the application for SSI benefits on behalf of Claimant, the New York State Office of Disability Determinations, which initially reviewed the claim, requested and obtained records from the hospital. (T at 221-35, 254).  The agency also requested records from Binghamton General Hospital (because Plaintiff had indicated that Claimant received treatment there), but was advised that no records were available. (T at 131, 236).

Prior to the administrative hearing, the Commissioner issued a hearing notice to Plaintiff, with a copy to her counsel, in which the Commissioner advised that any additional evidence should be submitted "right away" and offering to "issue a subpoena that requires a person to submit documents or testify" at the hearing. (T at 69).

At the administrative hearing, Plaintiff's counsel requested that the ALJ hold the record open for three weeks because "We're waiting on treatment records from Dr. Wu . . . ." (T at 40).  The ALJ granted the request with the following statement: "Okay. Okay. We'll leave the record open for a period of three weeks to get, to allow you to get those additional pieces of evidence.  If you need some additional time, please let me know." (T at 40).

Following the hearing, Plaintiff's counsel submitted additional records from United Health Services Hospital, in which Prudence Dvorsky, RN, described Claimant's diabetes as "uncomplicated, type 1." (T at 266).  No records were submitted from Dr. Wu and there is no evidence that Plaintiff's counsel either requested additional time to obtain such evidence or asked the ALJ to issue a subpoena.

Although the ALJ has an affirmative duty to develop the administrative record, the ALJ's obligation is not unlimited.  Plaintiff cannot simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand. This is particularly so where (as here) Plaintiff, through counsel, requested and received additional time to obtain the evidence in question and then failed to produce it without asking for more time or for issuance of a subpoena.  In addition, Plaintiff's counsel submitted additional evidence following the hearing (albeit not from Dr. Wu), which could have led the ALJ reasonably to conclude that no further records were available or forthcoming.

At least two district courts in this Circuit have held that the ALJ may satisfy the duty to develop the record by relying on the claimant's counsel to obtain additional medical documentation. See Rivera v. Commissioner of Social Sec., 728 F. Supp.2d 297, 330 (S.D.N.Y. 2010)("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel . . . Accordingly, the ALJ's request that plaintiff's attorney obtain the recent treatment records from Lincoln Hospital fulfilled his obligations with regard to developing the record.")(citations omitted); Pagan v. Astrue, No. 11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012)(holding that ALJ satisfied duty to develop record by granting counsel additional time to obtain evidence and providing opportunity to request a further extension); but see Newsome v. Astrue, 817 F. Supp.2d 111, 137 (E.D.N.Y. 2011)("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record.").

10

The Second Circuit's summary order in Jordan v. Commissioner of Social

Security 142 Fed.Appx. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sep't 8,

2005)(unpublished), while non-precedential, is nonetheless instructive:

> The ALJ fulfilled his duty to develop the administrative record. . . . Although the ALJ did not contact or obtain records from Dr. Arena, a treating physician whom Jordan mentioned at his hearing: [i] Jordan's counsel volunteered to secure Dr. Arena's records; [ii] the ALJ kept the record open to allow counsel to do so, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; [iii] counsel subsequently contacted the Social Security Administration to advise it that Jordan had "nothing further to add" to the record; and [iv] Jordan did not request the ALJ's assistance in contacting or securing evidence from Dr. Arena. Under these circumstances, we cannot say that the ALJ failed to discharge his duty to develop the record.

Lastly, this Court notes that the record does contain evidence concerning

Claimant's diabetes that supports the ALJ's conclusion that the impairment, while

severe, did not meet, medically equal, or functionally equal one of the impairments

listed in 20 CFR Part 404, Subpart P, Appendix 1.  Dr. Jamshid Sheikh, a pediatric

consultative examiner, noted the diagnosis of type 1 diabetes, but opined that Claimant

could "participate in educational, social, and recreational activities." (T at 240).

Claimant's first grade teacher reported that Claimant experienced "[o]ccasional days

with hypoglycemia," which made her "feel shaky, irritable, unable to concentrate," but

these episodes are "usually corrected quickly." (T at  146).  The non-examining State

Agency review consultants determined that Claimant's impairments, including diabetes,

did not meet, medically equal, or functionally equal a listed impairment. (T at 247-51).

In light of the foregoing, this Court finds no reversible error with regard to this

aspect of the ALJ's decision and further finds that the ALJ satisfactorily discharged his duty to develop the administrative record.

### b.    Credibility

Plaintiff testified as follows: Claimant receives four shots of insulin daily, three at home and once from the school nurse. (T at 40, 48-49).  She has learning disabilities and ADHD. (T at 41).  Claimant cannot read or write and has difficulty paying attention. (T at 42).  She requires frequent redirection and has difficulty with expressive language. (T at 42-43).  Claimant has difficulty with social interactions and reading the emotions of other people. (T at 44).  She has hand tremors. (T at 45).  Claimant has memory problems and "staring spells," where she become inattentive to her environment. (T at 46-47).

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (T at 27).  With regard to Claimant's diabetes, the ALJ recognized that Claimant receives four insulin shots daily, but also noted that "[h]appily the condition has not yet resulted in any problems with vision, neuropathy or end organ damage." (T at 27).  Plaintiff argues that the ALJ erred by making this determination without first seeking the records of Claimant's pediatric endocrinologist.  However, the ALJ correctly observed that there was no evidence in the record of vision problems, neuropathy or end organ damage.  Moreover, as discussed above, the absence of the endocrinologist's records cannot be attributed to any failure by the ALJ to satisfy his

duty to develop the record.

Concerning the allegations of ADHD and learning disabilities, the Court finds these aspects of the ALJ's credibility determination seriously flawed. The ALJ acknowledged that Claimant "doesn't do terribly well in school," but noted that she "has an average IQ" and concluded that "the record suggests that many of her problems are due to immaturity rather than to any real mental deficits." (T at 28). With regard to Claimant's speech impairment, the ALJ recognized that Claimant received speech therapy for expressive language delays, but noted that he "had no problem understanding her at the hearing." (T at 28).

First, the record does not "suggest" that "many" of Claimant's problems are due to "immaturity." Claimant's educational records indicated that she required "hand over hand assistance for nearly all academic activities" and was "able to perform only minimal tasks within the regular classroom setting." (T at 98-99). Her first grade and second grade special education teachers both noted "very serious" problems with regard to reading and comprehending written material; providing organized oral explanations and adequate descriptions; and expressing ideas in written form. (T at 141, 178). Although a school report prepared by Claimant's second grade special education teacher described Claimant as "very immature" (T at 175), there is nothing in the record to support the ALJ's "suggestion" that the lack of maturity is the proximate cause of Claimant's documented difficulties.

Second, the ALJ noted on multiple occasions that Claimant had not received any treatment for ADHD. (T at 26, 30). It appears the ALJ may have discounted the

seriousness of Claimant's condition (and/or Plaintiff's testimony concerning that condition) based upon the apparent lack of treatment.  However, the ALJ never afforded Plaintiff an opportunity to explain the lack of treatment.  This was error.  <u>See</u> SSR 96-7p (ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").  Moreover, the fact that Plaintiff sought and received an array of special education services for Claimant certainly lends credibility to her allegations of serious academic and behavioral issues.

　　　　Third, the ALJ's decision to discount Claimant's speech and language issues because the ALJ "had no problem understanding her at the hearing" was error.  The ALJ's personal observations during the hearing are entitled to limited weight.  <u>See DeLeon v. Sec. of Health and Human Servs.</u>, 734 F.2d 930, 935 (2d Cir.1984); <u>Rivera v. Schweiker</u>, 717 F.2d 719, 724 (2d Cir.1983); <u>Carroll v. Sec. of Health and Human Servs.</u>, 704 F .2d 638, 643 (2d Cir.1983).  Moreover, Dawn Megyeri, M.S., CCC-SLP, performed a consultative speech and language evaluation and concluded that Claimant's "language delay coupled with her articulation delay [were] considered significant [and] . . . likely to impact her educational success and her ability to communicate with peers." (T at 245).  Anne Marie Murphy, Claimant's speech-language pathologist, who provided speech therapy on a frequent basis, described Claimant's scores on standardized tests of language as "significantly below peers" and indicated that an unfamiliar listener would be able to understand only about half of Claimant's speech. (T at 264-65).  Certainly, the ALJ should have given more weight to the

professional opinion of the speech-language pathologist, who saw Claimant on a regular basis, than to his lay assessment of Claimant's articulation during a very brief administrative hearing.

The ALJ thus improperly discounted Plaintiff's credibility.  Moreover, as set forth below, the ALJ also erred when he concluded that Plaintiff did not have a marked limitation in at least two of the domains.

### c.      Functional Equivalence

If the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing. Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In this case, the ALJ found that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting with and relating to others; (4) less than marked limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 27-34).

### i.      Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned.  20 C.F.R. § 416.926a(g). A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform

math, and discuss history and science.  The child should be able to demonstrate these skills both in academic situations and in daily living.  20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a claimant might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and has difficulty explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

The ALJ found that Claimant had a less than marked limitation as to this domain. He relied heavily on Plaintiff's Individualized Education Program from June of 2007, in which Claimant's IQ scores were noted to be within normal limits. (T at 97).  Claimant was described as a hard-worker, who attempted all new tasks and had no difficulty with transitions to new activities. (T at 99).  However, the overwhelming evidence is to the effect that Claimant has marked limitations with regard to this domain.  She was noted to be performing below academic grade level and could recognize the letters A-P and numbers  1-10 only on an inconsistent basis. (T at 99).  Claimant had difficulties expressing her thoughts, had difficulty understanding what was asked of her; and required hand-over-hand assistance for nearly all academic activities. (T at 99).

Claimant's first grade teacher noted "very serious" problems with regard to reading and comprehending written material; providing oral explanations and adequate descriptions; and expressing ideas in written form. (T at 141). "Serious" problems were noted in terms of comprehending and doing math problems; understanding and

16

participating in class discussions; and applying problem-solving skills in class discussions. (T at 141).  The teacher indicated "obvious" problems with regard to comprehending oral instructions, understanding school and content vocabulary, learning new material, and recalling and applying previously learned material. (T at 141).

Claimant's second grade teacher assessed "very serious" problems understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions. (T at 178).  The teacher indicated "serious" problems in terms of understanding and participating in class discussions, learning new material, and recalling and applying previously learned material. (T at 178).

Claimant's speech-language pathologist indicated that Claimant has difficulty understanding and making predictions; understanding similarities and differences; determining causes of situations; understanding and explaining problem solving; and understanding "why" questions. (T at 265).  Lisa Paultre, a school psychologist, noted that Claimant forgot information she had already learning, demonstrated "poor" arithmetic skills,  and was "poor" in spelling. (T at 262).

The fact that Claimant exhibited limitations of this severity even within the highly structured and supportive setting of a 12:1:1 program[3] suggests that her true limitations are even greater than indicated by her teachers and therapist.  See Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002)(noting that the

---

[3]A 12:1:1 program is compromised of 12 students, one special education teacher, and one aide.

"Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting.").[4]

In light of the foregoing, this Court has little difficulty concluding that the ALJ's finding was not supported by substantial evidence and that Claimant had a marked limitation as to this domain.

## ii.    Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or

_____

[4]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

In support of his conclusion that Claimant had a less than marked limitation in this domain, the ALJ noted that Claimant had not received any treatment for ADHD. The ALJ also referenced the report of Dr. Sheikh, the consultative examiner, who described Claimant's attention span as "normal" for her age. (T at 239).  The ALJ also found it noteworthy that Claimant "matriculated every year since kindergarten, which she repeated." (T at 30).

Once again, the overwhelming evidence that Claimant has marked limitations with regard to this domain.  To the extent the ALJ discounted the severity of Claimant's ADHD based upon the apparent lack of treatment, this was error for the reasons referenced above.  Moreover, Claimant's academic progress must be viewed in light of the fact that she was placed in highly structured and supportive educational settings (i.e. the 12:1:1 class) and, even then, was described as performing below academic level. (T at 99).  Claimant's first grade teacher noted that Claimant required "some adult support" and demonstrated "serious" problems carrying out multi-step directions and "obvious" problems in terms of paying attention when spoken to directly, sustaining attention during play/sports activities; focusing long enough to finish an assigned activity or task; carrying out single-step instructions; organizing her own things or school materials;

19

completing work accurately without careless mistakes; and working at a reasonable pace/finishing on time. (T at 142).

Claimant's second grade teacher indicated "very serious" problems carrying out multi-step directions, completing work accurately without careless mistakes; and working at a reasonable pace/finishing on time. (T at 179).  He noted that Claimant does not attempt tasks independently and described her as "highly distractible and impulsive." (T at 179).  The teacher indicated "serious" problems in terms of focusing long enough to finish an assigned activity or task; carrying out single-step instructions; organizing her own things or school materials; and completing class/homework assignments. (T at 179).  The school psychologist noted inattention, distractibility, and difficulty completing homework. (T at 262).

In light of the foregoing, this Court has little difficulty concluding that the ALJ's finding was not supported by substantial evidence and that Claimant had a marked limitation as to this domain.

### 3.   Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a

remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  For the reasons stated above, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a. Claimant's mother testified to significant limitations.  Claimant's teachers, school psychologist, and speech-language therapist indicated that Claimant has persistent and significant limitations across several aspects of the domains of acquiring and using information and attending and completing tasks.  The fact that Claimant's limitations were so significant even in the highly structured and supported special education environment suggests that the severity of those limitations was even greater outside of that structure.

Plaintiff's application for benefits on behalf of Claimant had been pending for more than two years when this case was filed.  Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

21

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is

GRANTED, that the Commissioner's Motion for Judgment on the Pleadings is DENIED,

the decision of the Commissioner is reversed, and this case is remanded to the

Commissioner for calculation of benefits.

Respectfully submitted,

Dated: September 18, 2012

      Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the

pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED;

and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security

for the calculation of benefits.